UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
|     Plaintiff, | : Civil Action No. _____ |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| NOBLE ENERGY, INC., JEFFREY L. | : **SECURITIES EXCHANGE ACT OF** |
| BERENSON, JAMES E. CRADDOCK, | : **1934** |
| BARBARA J. DUGANIER, THOMAS J. | : |
| EDELMAN, HOLLI C. LADHANI, DAVID L. | : **JURY TRIAL DEMANDED** |
| STOVER, SCOTT D. URBAN, WILLIAM T. | : |
| VAN KLEEF, and MARTHA B. WYRSCH, | : |
| | : |
|     Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Noble Energy, Inc., ("Noble Energy or the "Company") and the members of Noble Energy's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Noble Energy and Chevron Corporation and its affiliates ("Chevron").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on August 11, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that the Company's stockholders vote in favor of a proposed transaction whereby Chelsea Merger Sub Inc., a wholly owned subsidiary of Chevron, will merge with and into Noble Energy, with Noble Energy surviving as a direct, wholly-owned subsidiary of Chevron (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Noble Energy stockholder will receive 0.1191 Chevron shares (the "Merger Consideration").

3. As discussed below, Defendants have asked Noble Energy's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Noble Energy's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Noble Energy is incorporated in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Noble Energy stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Jeffrey L. Berenson has served as a member of the Board since May 2005.

11. Individual Defendant James E. Craddock has served as a member of the Board since July 2015.

12. Individual Defendant Barbara J. Duganier has served as a member of the Board since May 2018.

13. Individual Defendant Thomas J. Edelman has served as a member of the Board since May 2005.

14. Individual Defendant Holli C. Ladhani has served as a member of the Board since October 2017.

15. Individual Defendant David L. Stover ("Stover") has served as a member of the Board since April 2014 and served as President and Chief Executive Officer since October 2014. Stover became the Board's Chairman in April 2015.

16. Individual Defendant Scott D. Urban has served as a member of the Board since October 2007 and is the Lead Independent Director.

17. Individual Defendant William T. Van Kleef has served as a member of the Board since November 2005.

18. Individual Defendant Martha V. Wyrsch has served as a member of the Board since December 2019.

19. Defendant Noble Energy is a Delaware corporation and maintains its principal offices at 1001 Noble Energy Way, Houston, Texas 77070. The Company's stock trades on the NASDAQ Stock Exchange under the symbol "NBL."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.      The Proposed Transaction**

22. Noble Energy, an independent energy company, engages in the acquisition, exploration, development, and production of crude oil and natural gas worldwide. The Company also owns, operates, develops, and acquires domestic midstream infrastructure assets in the DJ and Delaware Basins. Its assets are located in the US onshore unconventional basins and various global offshore conventional basins in the Eastern Mediterranean and off the west coast of

Africa. As of December 31, 2019, the Company had 2,050 million barrels oil equivalent of total proved reserves. Noble Energy was founded in 1932 and is headquartered in Houston, Texas.

23. On July 20, 2020, the Company and Chevron jointly announced the Proposed Transaction:

> SAN RAMON, Calif.--(BUSINESS WIRE)--Chevron Corporation (NYSE: CVX) announced today that it has entered into a definitive agreement with Noble Energy, Inc. (NASDAQ: NBL) to acquire all of the outstanding shares of Noble Energy in an all-stock transaction valued at $5 billion, or $10.38 per share. Based on Chevron's closing price on July 17, 2020 and under the terms of the agreement, Noble Energy shareholders will receive 0.1191 shares of Chevron for each Noble Energy share. The total enterprise value, including debt, of the transaction is $13 billion.
>
> The acquisition of Noble Energy provides Chevron with low-cost, proved reserves and attractive undeveloped resources that will enhance an already advantaged upstream portfolio. Noble Energy brings low-capital, cash-generating offshore assets in Israel, strengthening Chevron's position in the Eastern Mediterranean. Noble Energy also enhances Chevron's leading U.S. unconventional position with de-risked acreage in the DJ Basin and 92,000 largely contiguous and adjacent acres in the Permian Basin.
>
> "Our strong balance sheet and financial discipline gives us the flexibility to be a buyer of quality assets during these challenging times," said Chevron Chairman and CEO Michael Wirth. "This is a cost-effective opportunity for Chevron to acquire additional proved reserves and resources. Noble Energy's multi-asset, high-quality portfolio will enhance geographic diversity, increase capital flexibility, and improve our ability to generate strong cash flow. These assets play to Chevron's operational strengths, and the transaction underscores our commitment to capital discipline. We look forward to welcoming the Noble Energy team and shareholders to bring together the best of our organizations."
>
> "This combination is expected to unlock value for shareholders, generating anticipated annual run-rate cost synergies of approximately $300 million before tax, and it is expected to be accretive to free cash flow, earnings, and book returns one year after close," Wirth concluded.

"The combination with Chevron is a compelling opportunity to join an admired global, diversified energy leader with a top-tier balance sheet and strong shareholder returns," said David Stover, Noble Energy's Chairman and CEO. "Over the last few years, we have made significant progress executing our strategic objectives, including driving capital efficiency gains onshore, advancing our offshore conventional gas developments and significantly reducing our cost structure. As we looked to build on this positive momentum, the Noble Energy Board of Directors and management team conducted a thorough process and concluded that this transaction is the best way to maximize value for all Noble Energy shareholders. We look forward to bringing together our highly complementary cultures and teams to realize the long-term value and benefits that this combination will deliver."

* * *

**Transaction Details**

The acquisition consideration is structured with 100 percent stock utilizing Chevron's attractive equity currency while maintaining a strong balance sheet. In aggregate, upon closing of the transaction, Chevron will issue approximately 58 million shares of stock. Total enterprise value of $13 billion includes net debt and book value of non-controlling interest.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the fourth quarter of 2020. The acquisition is subject to Noble Energy shareholder approval. It is also subject to regulatory approvals and other customary closing conditions.

The transaction price represents a premium of nearly 12% on a 10-day average based on closing stock prices on July 17, 2020. Following closing of the transaction, Noble Energy shareholders will own approximately 3% of the combined company.

**Advisors**

Credit Suisse Securities (USA) LLC is acting as financial advisor to Chevron. Paul, Weiss, Rifkind, Wharton & Garrison LLP is acting as legal advisor to Chevron. J.P. Morgan Securities LLC is acting as financial advisor to Noble Energy. Vinson & Elkins LLP is acting as legal advisor to Noble Energy.

* * *

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Noble Energy's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Registration Statement**

25. On August 11, 2020, Noble Energy and Chevron jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Registration Statement fails to provide material information concerning financial projections prepared by management and relied upon by J.P. Morgan in its analyses. The Registration Statement indicates that in connection with the rendering of its fairness opinion, management prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and J.P. Morgan with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial

7

advisor. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2029: EBITDAX; Free Cash Flow; and Net Debt, but fails to provide line items used to calculate these metrics or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a registration statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the

>residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

30. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Registration Statement not misleading.

31. The Registration Statement also fails to disclose Chevron's financial projections, which are particularly material, where, as here, the merger consolidation consists of the acquiring company's stock.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

32. With respect to J.P. Morgan's *Selected Public Trading Multiples* Analysis, the Registration Statement fails to disclose the basis for selecting multiple reference ranges for Noble Energy of 4.75x – 7.00x and 3.50x – 6.00x for firm value to estimated 2021 and 2022 EBITDAX, respectively, and 3.00x – 4.00x and 2.25x – 3.25x for equity value to estimated 2021 and 2022 operating cash flow, respectively. The Registration Statement also fails to disclose operating cash flow that was utilized in the analysis.

33. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose the basis for selecting multiple reference ranges for firm value to NTM EBITDAX of 4.75x – 9.00x.

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the terminal values of Noble Energy at the end of the nine-year period ending 2029; (ii) line items used to calculate the Company's unlevered free cash flows for

fiscal years 2021 through 2029; (iii) the inputs and assumptions underlying the use of the terminal value growth rate ranging from (1.5%) to 1.5%; (iv) the inputs and assumptions underlying the discount rates ranging from 10% to 12%; and (v) the number of fully diluted outstanding of Noble Energy common stock.

35. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the

Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff

be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Noble Energy within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Noble Energy, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Noble Energy, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Noble Energy, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement

at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

46. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 12, 2020

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

**OF COUNSEL:**

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*